## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 20 2011
BY_____ J.T. NOBLIN, CLERK
_____DEPUTY

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | **CIVIL ACTION NO.** 1:11cv179LGRHW |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT** |
| **VS.** | ) | **and** |
| | ) | |
| **SIGNAL INTERNATIONAL, LLC** | ) | **JURY TRIAL REQUEST** |
| **Defendant.** | ) | |
| | ) | |

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, and Title I of the Civil Rights Act of 1991 ("Title VII"), to correct unlawful employment practices on the basis of national origin, race, and retaliation, and to provide appropriate relief to Sabulal Vijayan ("Vijayan"), Joseph Jacob Kadakkarappally ("Kadakkarappally"), and a class of over 500 similarly situated Indian nationals (collectively referred to herein as "the Indian Employees") brought to the United States by Defendant Signal International, LLC ("Signal") from the country of India to work as employees at Signal facilities in Mississippi and Texas.

Signal's unlawful practices adversely affected the Indian Employees as a class. Plaintiff, the U.S. Equal Employment Opportunity Commission ("Commission"), alleges Signal violated Title VII by subjecting Vijayan,

Kadakkarappally, and similarly situated Indian Employees to: (1) a hostile work environment based on national origin (Indian), and/or race (Asian); and (2) disparate, segregated, and discriminatory treatment, concerning the terms and conditions of their employment. Moreover, Plaintiff alleges Signal retaliated against Vijayan and Kadakkarappally, because they opposed Defendant's unlawful conduct. Finally, the Commission contends that Defendant engaged in a pattern or practice of discrimination against the Indian Employees because of their race and/or national origin, intending to deny to said employees the full enjoyment of the rights guaranteed by Title VII.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to 706(f)(1) and (3) and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (f)(3), 42 U.S.C. § 2000e-6, and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  This Court has proper venue.  Most of the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the

"Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by §§ 706(f)(1), 706(f)(3), and 707, of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and § 2000e-6.

4.     At all relevant times, Defendant Signal, a Delaware corporation, has been doing business in the City of Pascagoula, State of Mississippi, and Orange, Texas.  Signal is engaged in the business of building and repairing off-shore oil rigs.

5.     At all relevant times herein, Defendant Signal has continuously been an employer engaged in an industry affecting commerce within the meaning of § 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

## CONDITIONS PRECEDENT TO SUIT

6.  More than thirty days prior to the institution of this action, Vijayan and Kadakkarappally filed charges with the Commission alleging violations of Title VII by Signal.

7.     All conditions precedent to the institution of this lawsuit have been fulfilled, to-wit:

      a)     Vijayan and Kadakkarappally filed timely charges of discrimination with the Commission;

b) The Commission issued Determinations regarding the allegations made by Vijayan and Kadakkarappally in which the Commission concluded, inter alia, that:

1) Defendant discriminated against Vijayan, Kadakkarappally and the Indian Employees as a class in the terms and conditions of their employment because of their race and/or national origin, in violation of Title VII;

2) Defendant subjected Vijayan, Kadakkarappally and the Indian Employees as a class to a hostile work environment because of their race and/or national origin, in violation of Title VII; and

3) Defendant retaliated against Vijayan and Kadakkarappally because they opposed conduct which they believed in good faith to be unlawful under Title VII;

c) The Commission made a good faith effort to resolve these findings through conciliation, conference, and persuasion. Those efforts proved unsuccessful.

## STATEMENT OF CLAIMS

8. Defendant, in the aftermath of Hurricane Katrina, was unable to obtain a sufficient number of qualified and reliable pipe fitters and welders to meet

4

the demands of its work load.

9.      Defendant, to meet this need, arranged to bring into the United States over 500 Indian men through the federal government's H-2B guestworker program.  These Indian Employees were hired by Defendant to provide labor and services at its Pascagoula, Mississippi, and Orange, Texas, locations.

10.     The first workers arrived in the end of October, 2006.  Additional workers came over in waves of 30 to 50 workers until on or about March, 2007.

11.     Defendant brought over more than 500 Indian employees, sending some of these workers to its facility in Pascagoula, Mississippi, and others to its facility in Orange, Texas.

12.     At each location the Indian Employees were required to live in modular trailers called "man camps." The "man camps" were built for the exclusive use of the Indian Employees.  No other Signal employees were required to live in the "man camps."

13.     Before the Indian Employees were permitted to begin work, Defendant required them to sign employment and housing agreements. These agreements were written in English, and Defendant did not give the Indian workers adequate time to read or understand these documents.

14.     One of these agreements allowed Defendant to deduct $35 a day (or

$1050 per month) from each Indian worker's earnings to reimburse Defendant for the cost of providing food, accommodations, and transportation for each such Indian Employee. Under this agreement Defendant could continue to deduct this amount from the worker's salary even if the Indian Employee elected not to eat the meals provided by Defendant and not to live in the accommodations provided by Defendant.

15.    The "man camps" were located on Signal property in isolated, industrial areas miles removed from shopping areas, places of worship, and residential communities. The camps were enclosed by fences and accessible only through a single guarded entrance.

16.    Signal assigned numbers to each Indian Employee and used these numbers as a form of identification and reference rather than using the employee's name.

17.    Signal camp personnel and supervisors used offensive language in speaking with and/or referring to the Indian Employees and insulted the Indian Employees on the basis of their race and/or national origin.

18.    Signal guards monitored the comings and goings of the Indian Employees by requiring them to show their employee identification badges. Signal guards also searched the packages and bags of Indian Employees when they entered the camps.

6

19.    Except on rare occasions, the Indian Employees were not permitted to receive visitors in the "man camps."

20.    The "man camps" were composed of a series of one room trailers connected by elevated walkways.  Most of the trailers were for sleeping and were referred to as "bunkhouses."   Up to twenty-four men were housed in each bunkhouse, sleeping in two-tiered bunk beds.  The bunk beds were so tightly packed in the bunkhouses that it was difficult for the workers to move about in the narrow passageways between bunks.

21.    The bunkhouses had insufficient toileting and bathing facilities for the twenty-four men.  The Indian Employees were forced to rise early to take their place in line for the few toilets and showers in each trailer.

22.    Privacy was non-existent for the Indian Employees. The Indian Employees experienced extreme difficulty sleeping due to the constant noise resulting from the close quarters and the comings and goings of workers who worked on different shifts.

22.    Signal personnel conducted surprise searches of the bunkhouses, including searching of worker's personal belongings.

23.    The Indian Employees took their meals in mess halls which were part of the "man camps."  The mess halls were only open during limited hours, set by Signal.  The food provided by Signal was of poor quality and was frequently bad,

7

stale or molded.

24.     As a result of unsanitary conditions, sickness was rampant in the camps, and the Indian Employees sometimes required hospitalization.

25.     The "man camps" had rules, enforced by Signal guards. The penalty for breaking rules was $250 for the first violation and $500 for a second violation.

26.     When the Indian Employees complained and asked to live outside the labor camps, Defendant Signal told the workers that even if they lived outside the camps, Signal would continue to deduct the $35/day charge from the Indian Employee's weekly wage.  As a result, the Indian Employees reasonably felt that they had no choice but to continue to live in the Signal "man camps."

27.     During the first two weeks of employing each Indian Employee, Defendant Signal also deducted between $100 and $200 a week from each employee's paycheck for tool kits which the Indian Employees were required to purchase from Defendant Signal.

28.     Vijayan and Kadakkarappally routinely complained to Signal, on behalf of themselves and the other Indian Employees, about the food, living conditions, camp facilities, camp rules, and terms and conditions of employment at Signal. Vijayan and Kadakkarappally frequently met with fellow Indian Employees to learn of their concerns relating to the conditions under which they were forced to work by Signal.

29.   In response to these complaints, Signal personnel warned the Indian Employees to stop complaining. Signal personnel and management regularly threatened the Indian Employees that if they did not continue working for Signal or did not work to Signal's specifications they would be deported to India.

30.   After complaining to Signal about the housing, food, and the overall terms and conditions of employment, the Indian Employees living in the Pascagoula "man camp" began meeting to discuss how to persuade Defendant to improve the working conditions of the Indian Employees.

31.   On or about March 4, 2007, Vijayan, Kadakkarappally, and other Indian Employees met with attorneys in a church near the Pascagoula facility. The purpose of this meeting was to discuss their rights as employees of Signal.

32.   Signal learned of the aforementioned meeting held on or about March 4, 2007. The recruiting agent Defendant Signal used in India, Sachin Dewan, called Vijayan's wife at her home in India and warned her that Vijayan must stop making complaints about Signal or Signal would return the Indian Employees to India.  Vijayan's wife informed Vijayan of this call.

33.   Vijayan informed the other Indian Employees about the call which his wife had received and word spread quickly through the Pascagoula and Orange camps regarding the threats against Vijayan.

34.    Vijayan and Kadakkarappally took leading roles in gathering information and voicing the complaints of the other Indian Employees to Signal.

35.    Defendant Signal called a meeting of the Indian Employees on March 8, 2007.   At this meeting, in the presence of Signal's legal counsel, Signal management told the Indian Employees that: 1) they were not being mistreated; 2) they were complaining too much; 3) management would only respond to complaints which it considered were legitimate; 4) Signal would fight back against any organizing efforts by the workers; and 5) if the workers brought any legal action against Signal, Signal would not extend the Indian employee's H-2B visas.

36.    The next morning, March 9, 2007, Signal locked the gate to the Pascagoula "man camp", thereby obstructing the sole means of direct entry to and from the camp.   Signal camp coordinator Darrell Snyder and approximately five security guards then swept through the bunkhouses carrying pictures of Vijayan, Kadakkarappally and other Indian Employees.

37.    Shortly after 5:00 a.m. on March 9, 2007, Signal forcibly transported Vijayan, Kadakkarappally and three other Indian Employees from their bunkhouse to another trailer used as a TV room.   Signal's plan was to keep these employees in the room, to discharge them from employment, and then to transport them to the airport for immediate return to India.   Signal's plan was only altered because Vijayan, en route to the TV room, attempted suicide by cutting his wrists.

38.     On March 9, 2007, Signal discharged Vijayan and Kadakkarappally.

39.     Shortly after the Indian Employees arrived in the United States, and continuing until the employment of all Indian Employees ceased, Signal subjected such employees to terms and conditions of employment that were less favorable than enjoyed by their non-Indian counterparts.

40.     This unequal treatment included but was not limited to Indian Employees being assigned the most undesirable work which non-Indian employees were not asked to perform and other disparate terms and conditions of employment.

## COUNT I

### [Title VII Hostile Work Environment Based on National Origin/Race]

41.     Plaintiff incorporates and reasserts the aforementioned paragraphs six (6) through forty (40) of this Complaint.

42.     Since at least October 2006, Signal has engaged in unlawful employment practices at their Pascagoula and Orange locations in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), including subjecting the class of Indian Employees to a hostile work environment based on race and/or national origin.

43.     Signal created and perpetuated a hostile work environment against the Indian Employees based on their race and/or national origin. Signal's supervisors

11

and managers made offensive and unwanted derogatory comments about the Indian employees and engaged in a series of demeaning and discriminatory actions, specifically directed solely at the Indian Employees based on their race and/or national origin.

44.    Signal's conduct was offensive, severe, unwelcome and pervasive and interfered with their working conditions. In addition to the conditions previously described in this Complaint, Signal subjected the Indian Employees to a hostile work environment, which included but was not limited to:

a)    Calling the Indian Employees insulting and offensive comments based on their race and/or national origin;

b)    Calling the Indian Employees "thieves" and "animals";

c)    Telling Indian Employees to "shut up" when Indian Employees raised complaints to Signal;

d)    Telling Indian Employees that the conditions in which they were living were better than the slums in India; and

e)    Referring to the Indian Employees as "F...ing Keralites", "rat[s]", "chronic whiners", and "back-stabbing whining little bitches".

45.    The hostile environment that existed at Signal facilities was created and perpetuated at the direction of Signal's management and supervisory personnel with direct supervisory and/or managerial authority over the Indian Employees.

46.    The unlawful hostile environment occurred with the full knowledge of Signal's management and supervisory personnel, and Signal failed to exercise

reasonable care either to prevent the creation of this hostile environment or to correct promptly the hostile environment once it existed.

47.    The unlawful employment practices complained of in the aforementioned paragraphs six (6) through forty-six (46) were intentional, and done with malice or with reckless indifference to the federally protected rights of Vijayan, Kadakkarappally, and similarly situated Indian Employees.

48.    The effect of the intentional practices complained of in aforementioned paragraphs six (6) through forty-six (46) has been to deprive Vijayan, Kadakkarappally, and similarly situated Indian Employees of equal employment opportunities and otherwise adversely affect their status as employees because of their race and/or national origin.

## COUNT II

### [Title VII National Origin/Race Discrimination: Employment Terms & Conditions]

49.    Plaintiff incorporates and reasserts the aforementioned paragraphs six (6) through forty-eight (48) of this Complaint.

50.  Since at least October, 2006, Defendant has engaged in unlawful employment practices at its Pascagoula, Mississippi, and Orange, Texas, facilities in violation of §702(a) of Title VII, 42 U.S.C. § 2000e-2(a).

51.    Shortly after the Indian Employees arrived in the United States, and continuing until the employment of al Indian Employees ceased,  Signal subjected

13

such employees to terms and conditions of employment that were less favorable than enjoyed by their non-Indian counterparts.

52.    This unequal treatment included but was not limited to being assigned the most undesirable work which non-Indian employees were not asked to perform and other disparate terms and conditions of employment.

53.    The unlawful employment practices complained of in the aforementioned paragraphs six (6) through fifty-two (52) were intentional, and done with malice or with reckless indifference to the federally protected rights of Vijayan, Kadakkarappally, and similarly situated Indian Employees.

54.    The effect of the intentional practices complained of in aforementioned paragraphs six (6) through fifty-two (52) has been to deprive Vijayan, Kadakkarappally, and similarly situated Indian Employees of equal employment opportunities and otherwise adversely affect their status as employees because of their race and/or national origin.

## COUNT III

### [Title VII Retaliation]

55.    Plaintiff incorporates and reasserts the aforementioned paragraphs six (6) through fifty-four (54) of this Complaint.

56.    Defendant Signal engaged in unlawful employment practices at its Pascagoula, Mississippi, facility in violation of §704(a) of Title VII, 42 U.S.C. §

14

2000e-3(a).

57.    Vijayan and Kadakkarappally, on behalf of themselves and the other Indian Employees, opposed Signal's treatment of the Indian Employees, which they reasonably believed in good faith to constitute discrimination in violation of Title VII. Signal was aware of this opposition on the part of Vijayan and Kadakkarappally. As set forth in detail in the preceding paragraphs of this Complaint, Signal retaliated against Vijayan and Kadakkarappally because they opposed Signal's discriminatory treatment of the Indian workers by increasing the severity of the discriminatory terms and conditions of their employment, forcibly detaining them against their will, and discharging them from employment, on March 9, 2007.

58.    The unlawful employment practices complained of in the aforementioned paragraphs six (6) through fifty-seven (57) were intentional, and done with malice or with reckless indifference to the federally protected rights of Vijayan and Kadakkarappally.

59.    The effect of the intentional practices complained of in aforementioned paragraphs six (6) through fifty-seven (57) has been to deprive Vijayan, and Kadakkarappally, individually, of equal employment opportunities and otherwise adversely affect their status as employees because they opposed practices made unlawful by Title VII.

## COUNT IV

## [Pattern or Practice Violation]

60.    Plaintiff incorporates and reasserts the aforementioned paragraphs six (6) through fifty-nine (59) of this Complaint.

61.    Defendant has engaged in a pattern or practice of subjecting its Indian Employees to a hostile environment and disparate terms and conditions of employment based on their race and national origin.

62.    The unlawful employment practices complained of in the aforementioned paragraphs six (6) through sixty-one (61) were intentional, and done with malice or with reckless indifference to the federally protected rights of Vijayan, Kadakkarappally, and similarly situated Indian Employees.

63.    The effect of the intentional practices complained of in aforementioned paragraphs six (6) through sixty-one (61) has been to deprive Vijayan, Kadakkarappally, and similarly situated Indian Employees of equal employment opportunities and otherwise adversely affect their status as employees because of their race and/or national origin.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or

16

participation with them from engaging in discrimination based on race or national origin: (1) in the terms and conditions of employment and (2) in decisions regarding workplace discipline and termination.

B.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in retaliation and any other employment practice which discriminates on the basis of race or national origin.

C.      Order Defendant Signal to institute and carry out policies, practices, and programs which provide equal employment opportunities for Indian Employees and which eradicate the effects of its past and present unlawful employment practices.

D.      Order Defendant Signal to make whole all of the Indian Employees wrongfully discharged or reduced in pay by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E.      Order Defendant Signal to make the Indian Employees whole by compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs six (6) through sixty-four (64) above, including relocation expenses, job search expenses, and medical expenses

not covered by the Signal's employee benefit plans in amounts to be determined at trial.

F.      Order Defendant Signal to make the Indian Employees whole by compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs six (6) through sixty-four (64) above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

G.      Order Defendant Signal to pay the Indian Employees punitive damages for its malicious and reckless conduct described in six (6) through sixty-four (64) above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

P. DAVID LOPEZ
General Counsel

JAMES E. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M Street, NE
Washington, D.C. 20507


C. EMANUEL SMITH
Regional Attorney
MS State Bar No. 7473


JULIE BEAN
Supervisory Trial Attorney
DC Bar No. 433292


STEVEN L. MURRAY
Trial Attorney
DC Bar No. 379955


CHARLES E. GUERRIER
Senior Trial Attorney
OH Bar No. 0023546


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1130- 22nd Street South
Suite 2000
Birmingham, Alabama 35205
Tel No. (205) 212-2043
Fax: (205) 212-2041

ANICA C. CONNER
Trial Attorney
Tennessee Bar #025325


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1407 Union Ave., Suite 901
Memphis, Tennessee 38104
901-544-0087 (direct)
901-544-0111 (fax)